**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JENNIFER HUEY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. |
| v. | ) | |
| | ) | |
| CELLCO PARTNERSHIP | ) | **JURY TRIAL DEMANDED** |
| d/b/a VERIZON WIRELESS, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Jennifer Huey ("Ms. Huey" or "Plaintiff") brings this Complaint against Defendant Cellco Partnership d/b/a Verizon Wireless ("Defendant" or "Verizon") and sets forth the following claims:

## INTRODUCTION

1.      This is an employment case arising from Verizon's discrimination and retaliation against Ms. Huey, a Solutions Specialist employed with Verizon from 2017 until her unlawful termination on January 8, 2020. During her employment, Ms. Huey had a great record of performance. However, after she suffered from a disability and serious medical condition which required invasive hand surgery and physical therapy, Verizon retaliated against her, denied her request for a reasonable

1

accommodation, and terminated her employment after she took protected medical leave. Furthermore, Verizon subjected her to sex discrimination when it disciplined her more harshly and terminated her even though a male co-worker committed the same alleged infraction.

2.     Verizon terminated Ms. Huey and cut off her health insurance when she was receiving intensive physical therapy. Ms. Huey subsequently could not afford to pay for physical therapy. As a result, Ms. Huey's dominant hand healed incorrectly, she requires a second surgery, and she lost full function of her hand. Ms. Huey is permitted to recover damages for this exacerbated injury.

3.      Ms. Huey asserts mixed motive and single motive claims under the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.,* the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*, and Title VII of the Civil Rights Act of 1964 ("Title VII"). She seeks injunctive and declaratory relief, back pay and lost economic benefits of her employment, reinstatement or front pay in lieu thereof, compensatory damages, special damages, punitive damages, liquidated damages under the FMLA, reasonable attorneys' fees and costs of litigation, and all other relief this Court may deem just.

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5.      Venue is proper in this Court because Defendant transacts business and has sufficient contacts within this district such that Defendant is subject to this Court's personal jurisdiction. *See* 28 U.S.C. § 1391(c)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Ms. Huey satisfied all administrative prerequisites to perfect her claims under Title VII and the ADAAA. Specifically, Ms. Huey timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and has filed this lawsuit within ninety (90) days of receiving the notice of right to sue.

## THE PARTIES

7.      Ms. Huey is now, and was at all times relevant to this action, a resident of the State of Georgia.

8.      Ms. Huey is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*., in that she had been employed with Defendant for more than twelve months and worked more than 1,250 hours in the 12 months preceding her notifying Defendant that she would need FMLA leave for her serious health

condition.

9.      Ms. Huey was at all relevant times an "employee" of Verizon within the meaning of ADAAA, 42 U.S.C. § 12111(4).

10.      Ms. Huey, at all relevant times to this action, was an individual with a disability within the meaning of the ADAAA, 42 U.S.C. § 12102(1).

11.      Defendant is a covered employer under the ADAAA, as it employs more than fifteen people.

12.      Defendant is also a covered employer under the FMLA, as it had more than fifty employees within a seventy-five-mile radius in each of twenty or more consecutive calendar weeks in the current or preceding year within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*.

13.      At all times relevant to this action, Verizon was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

14.      At all times relevant to this action, Ms. Huey was an "employee" of Verizon under 42 U.S.C. § 2000e(f).

15.      Defendant is a foreign profit corporation doing business in Georgia.

16.      Defendant may be served with a summons and copy of the Complaint in this action by delivering process to its registered agent, C T Corporation System, 289 S. Culver St., Lawrenceville, Georgia 30046-4805.

## STATEMENT OF FACTS

17.    Ms. Huey began working for Verizon as a Solutions Specialist on April 10, 2017.

18.    As a Solutions Specialist, Ms. Huey performed the job of an assistant manager and conducted detail sales in the store. She also was a keyholder.

19.    During her employment, Ms. Huey had a good record of performance.

20.    For example, in December 2019, the month before Ms. Huey's termination, General Manager Tarah Armstrong told Ms. Huey that she was their store's best sales representative

21.    Until her termination, Ms. Huey never received verbal or written disciplinary action of any kind.

### *Ms. Huey's Disability and FMLA Leave*

22.    On the morning of July 29, 2019, Ms. Huey tore the tendons in her right (dominant) hand.

23.    The same day, she advised a manager, Charita Leak, about her hand injury.

24.    Approximately two days later, Ms. Huey began wearing splints and a brace, as she was unable to grip anything with her right hand.

25.    Even with one good hand, Ms. Huey continued to perform her job

duties and excel at her job.

26.     On August 8, 2019, Ms. Huey was referred to a hand specialist by an Urgent Care doctor.

27.     On August 19, 2019, Ms. Huey was diagnosed with having torn the sagittal bands of her metacarpophalangeal flexor tendons. Ms. Huey further learned that she needed to have invasive hand surgery and physical therapy.

28.     On or about August 21 or August 22, 2019, Ms. Huey told Ms. Armstrong that her doctor informed her that her hand was so badly injured that she required hand surgery. Ms. Huey then informed Ms. Armstrong that she needed to file a workers' compensation claim.

29.     Ms. Armstrong claimed that she had no idea how to file a workers' compensation claim but said she would inform Human Resources Partner Shannon Darby about Ms. Huey's work injury.

30.     Several days after informing Ms. Armstrong about her need for hand surgery, Ms. Armstrong told Ms. Huey that her injury was in her head and that she was just using the injury as an excuse to not work.

31.     On August 24 or August 26, 2019, Human Resources Partner Shannon Darby informed Ms. Huey that she would be investigated for incorrectly applying military veteran discounts on customers' accounts.

32.     According to Ms. Darby, the investigation into Ms. Huey regarding military discounts started on July 29, 2019—the same date Ms. Huey was injured.

33.     Ms. Huey was surprised because she had applied such discounts in accordance with the procedures that Verizon's previous management team, including Brian Needles, had taught her, and which were commonly used and enforced in her store.

34.     There was no specific written policy or formal training on the correct procedure for applying veteran and military discounts.

35.     Meanwhile, the condition of Ms. Huey's hand continued to worsen.

36.     As a result of Ms. Huey's disability, on or about September 19, 2019, she requested an accommodation in the form of medical leave for a definite duration of time.

37.     Ms. Huey was subsequently approved to take Total Temporary Disability and FMLA (combined) from September 20, 2019 to December 11, 2019, for her disability.

38.     Ms. Huey underwent hand surgery during her leave on November 27, 2019.

39.     On or about December 11, 2019, she requested another accommodation, specifically the use of a tablet stand.

40.     Ms. Huey's job required her to use a tablet regularly throughout the day, and a stand would have allowed her to use her tablet in a stationary position without having to use both hands.

41.     On December 16, 2019, Ms. Huey returned to work, but Verizon refused to provide her with a tablet stand, even on a temporary basis.

42.     Upon returning to work, Ms. Huey discovered that her account had been locked and she could not sign into the Verizon system to make new sales.

43.     Ms. Huey informed Ms. Armstrong of the problem, but Ms. Armstrong would not do anything to get her account unlocked.

44.     On December 23, 2019, Ms. Huey informed Ms. Darby via email that she went to her doctor's office at OrthoGeorgia to have her workplace accommodation form completed. Ms. Huey also explained that OrthoGeorgia would not email the form but rather would mail it to her after 7-10 business days, at which point Ms. Huey said she would provide it to Ms. Darby. Despite not receiving her tablet stand accommodation and being locked out of the system for several weeks, Ms. Huey continued to perform her job duties, and despite only working half of the month, she sold so many new phone lines that she nearly doubled her quota for December 2019.

### *Ms. Huey's Unlawful Termination*

45.      On January 8, 2020, Verizon terminated Ms. Huey's employment.

46.      At the time of her termination, Verizon had not yet approved Ms. Huey's request for an accommodation and use of a tablet stand.

47.      At the time of her termination, Ms. Huey had been back from her FMLA medical leave after receiving surgery for approximately two and a half weeks. Verizon claimed that Human Resources had concluded its investigation into her former practices for applying veteran and military discounts and had recommended her immediate termination.

48.      According to Ms. Darby, Verizon investigated eight employees regarding veteran and military discounts.

49.      Only two of those eight employees were terminated. Both were female.

50.      When Ms. Huey asked why her male coworker Bernard Grant, who had applied veteran and military discounts in the same manner, was not fired, Ms. Armstrong replied that he would not be fired because he did not have as many "wrong discounts" as she did.

51.      Ms. Huey had no known code of conduct violations before her hand injury.

52.      Ms. Huey had never been subjected to progressive discipline of any

kind before her termination.

53.     When Ms. Huey was terminated, Verizon did not compensate her for accrued PTO time.

54.     Ms. Huey was also terminated two months before she would have vested with Verizon's matching 401K and profit-sharing.

55.     Verizon immediately cut off Ms. Huey and her husband's health insurance.

56.     With no job or health insurance, Ms. Huey could not afford to pay for physical therapy.

57.     As a direct result, Ms. Huey's hand healed incorrectly, and she now requires a second surgery.

58.     Even with the second surgery, Ms. Huey's doctor has made it clear that her dominant hand will never fully recover and that she will not regain full functionality of that hand.

## COUNT ONE
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA

59.     Ms. Huey incorporates by reference paragraphs 4 through 58 of the Complaint.

60.     At all relevant times, Ms. Huey was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental

and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

61.    Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

62.    Ms. Huey requested reasonable accommodations from Verizon relating to her disability, including but not limited to, medical leave for a definite duration of time, and the use of a tablet stand.

63.    Defendant intentionally discriminated against Plaintiff by subjecting her to adverse employment actions including, but not limited to, denying her reasonable accommodations and terminating her employment, because of her disability.

64.    Defendant violated Plaintiff's rights under the ADAAA, 42 U.S.C. § 12112, by discriminating against her because of her disabilities.

65.    As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, bonuses, and other benefits, including health insurance and social security, all in an amount to be

established at trial.

66.     Defendant's actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, physical pain and suffering, and other non-pecuniary losses, all in an amount to be established at trial. Ms. Huey is entitled to compensatory damages that include her emotional pain and suffering and physical pain and suffering due her exasperated hand injury. Verizon terminated Ms. Huey and cut off her health insurance when she was receiving intensive physical therapy following what should have been her only surgery. Because Verizon cancelled her health insurance, the then-unemployed Ms. Huey could not afford to pay for physical therapy. As a result, Ms. Huey's hand healed incorrectly, she requires a second surgery, and she lost full function of her dominant hand. Ms. Huey is thus permitted to recover compensatory damages for this exacerbated injury.

67.     Ms. Huey is permitted to recover special damages for the costs, including health care costs, associated with her exacerbated injury caused by Defendant's discrimination.

68.     Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

69.     Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT TWO
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

70.     Plaintiff incorporates paragraphs 4 through 58 herein by reference as if set forth fully herein.

71.     At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

72.     Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

73.     Defendant intentionally discriminated against Plaintiff by subjecting her to adverse employment actions including, but not limited to, failing and refusing to engage in the interactive process, denying her reasonable accommodations, and terminating her employment.

74.     By denying Plaintiff reasonable accommodations and instead terminating her employment, Defendant discriminated against Plaintiff because of her disabilities and violated her rights under the ADAAA, 42 U.S.C. § 12112(5)(A).

75.     As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, bonuses, and other benefits, including health insurance and social security, all in an amount to be established at trial.

76.     Defendant's actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, physical pain and suffering, and other non-pecuniary losses, all in an amount to be established at trial. Ms. Huey is entitled to compensatory damages that include her emotional pain and suffering and physical pain and suffering due her exasperated hand injury. Verizon terminated Ms. Huey and cut off her health insurance when she was receiving intensive physical therapy following what should have been her only surgery. Because Verizon cancelled her health insurance, the then-unemployed Ms. Huey could not afford to pay for physical therapy. As a result, Ms. Huey's hand healed incorrectly, she requires a second surgery, and she lost full function of her dominant hand. Ms. Huey is thus permitted to recover compensatory damages for

this exacerbated injury.

77.    Ms. Huey is permitted to recover special damages for the costs, including health care costs, associated with her exacerbated injury caused by Defendant's discrimination.

78.    Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

79.    Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

### COUNT THREE
### RETALIATION IN VIOLATION OF THE ADAAA

80.    Plaintiff incorporates paragraphs 4 through 58 herein by reference as if set forth fully herein.

81.    At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1).

82.    Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

83.    Plaintiff engaged in statutorily protected activity by, among other

things, exercising or attempting to exercise or enjoy her rights under the ADAAA, including but not limited to, requesting reasonable accommodations for her disability.

84.     Defendant subjected Plaintiff to adverse employment actions including, but not limited to, denying her request for reasonable accommodations, disciplining her, investigating her, and terminating her employment, among other things, because she engaged in statutorily protected activity under the ADAAA.

85.     Defendant's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

86.     As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, bonuses, and other benefits, including health insurance and social security, all in an amount to be established at trial.

87.     Defendant's actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, physical pain and suffering, and other non-pecuniary losses, all in an amount to be established at trial. Ms. Huey is entitled to compensatory damages that include her emotional pain and suffering and physical pain and suffering due her exasperated hand injury. Verizon terminated Ms. Huey and cut off her health insurance when she was receiving intensive physical therapy following what should have been her only surgery. Because Verizon cancelled her health insurance, the then-unemployed Ms. Huey could not afford to pay for physical therapy. As a result, Ms. Huey's hand healed incorrectly, she requires a second surgery, and she lost full function of her dominant hand. Ms. Huey is thus permitted to recover compensatory damages for this exacerbated injury.

88.     Ms. Huey is permitted to recover special damages for the costs, including health care costs, associated with her exacerbated injury caused by Defendant's retaliation.

89.     Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

90.     Plaintiff is entitled to be reinstated to employment by Defendant, and,

if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT FOUR
## RETALIATION FOR EXERCISE OF FMLA RIGHTS

91.     Ms. Huey incorporates paragraphs 4 through 58 of the Complaint.

92.     Ms. Huey was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

93.     By terminating her employment after she took time off that was covered by FMLA leave, Defendant retaliated against Plaintiff for her use of protected FMLA leave and for exercising her rights under the FMLA.

94.     Plaintiff's exercise or anticipated exercise of her FMLA rights was a "motivating factor" in Defendant's decision to terminate her employment, even if there exists a legitimate non-discriminatory reason that also motivated these actions.

95.     Defendant's actions in retaliation for Plaintiff's exercise of her rights under the FMLA and anticipated exercise of her rights under the FMLA were committed with reckless disregard for her right to be free from discriminatory treatment for exercising her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(1)(2).

96.     The effect of Defendant's actions has been to deprive Plaintiff of a job,

as well as income in the form of wages, health insurance, dental and vision insurance, prospective retirement benefits, social security, and other benefits due her because of her right to leave under the FMLA.

97.     As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

98.     Plaintiff is also entitled to liquidated damages for Defendant's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT FIVE
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

99.     Ms. Huey incorporates paragraphs 4 through 58 of the Complaint.

100.     Ms. Huey is a member of a protected class in that she is female.

101.     Verizon discriminated against Ms. Huey on the basis of her sex, including but not limited to, subjecting her to disparate treatment by terminating her employment for an alleged violation while retaining her male coworker who also committed the alleged violation.

102.     Ms. Huey's sex was a "motivating factor" in the decision by Verizon to subject her to discrimination on the basis of her sex as pled above, even if the sex of Plaintiff was not the only factor that motivated the decision of Defendant to

subject Plaintiff to sex discrimination.

103.     The above-pled discriminatory conduct toward Plaintiff constitutes unlawful sex discrimination against Plaintiff in violation of Title VII.

104.     Defendant acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under Title VII, and acted in reckless disregard for Plaintiff's rights under Title VII.

105.     As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

106.     Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay in lieu of reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Huey demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That this Court take jurisdiction of this matter;

B.     That process be served;

C.     That Ms. Huey be awarded a declaratory judgment that Defendant

violated the ADAAA, the FMLA, and Title VII;

D.      That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADAAA, the FMLA, and Title VII;

E.      That the Court award Ms. Huey back pay and all benefits, privileges, and rights previously denied;

F.      That the Court award Ms. Huey front pay in lieu of reinstatement;

G.      That the Court award Ms. Huey liquidated damages and compensatory damages in an amount to be determined by the trier of fact for emotional and physical pain—including emotional pain and suffering and physical pain and suffering due Ms. Huey's exasperated hand injury caused by Verizon terminating Ms. Huey and cancelling her health insurance;

H.      That the Court award Ms. Huey special damages in an amount to be determined by the trier of fact for the costs, including health care costs, associated with her exacerbated injury caused by Defendant's discrimination and retaliation;

I.      That the Court award Ms. Huey punitive damages in an amount to be determined by the trier of fact;

J.      That the Court award Ms. Huey her costs in this action and reasonable attorneys' fees;

K.      That the Court grant to Ms. Huey the right to have a trial by jury on all

issues triable to a jury; and

L.      That the Court grant such additional relief as the Court deems proper

and just.

Respectfully submitted this 28th day of January, 2021.

**BUCKLEY BEAL LLP**

*/s Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rberlin@buckleybeal.com
Andrew R. Tate
Georgia Bar No. 518068
atate@buckleybeal.com
600 Peachtree Street, NE
Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
*Counsel for Plaintiff*